Bill dismissed as to executors of George Moore and as to Sarah Moore. Decree payment of £10.19.3 by Aydelot and wife. Complainant pays his own costs and costs of George Moore's executors and of Sarah Moore. Aydelot and wife pay their own costs.

JOHN N. BURTON and ANN, his Wife, late Ann Shankland, RHOADS BAYARD SHANKLAND, WILLIAM G. SHANKLAND, and JAMES-SHANKLAND, by JOHN BURTON, his next Friend, and SHEPPARD PRETTYMAN, JR., and MARY, his Wife, Heirs at law of Rhoads Shankland, and JOHN N. BURTON, Administrator of said Rhoads Shankland, v. WILLIAM B. SPICER and JOSEPH TAM.

Court of Chancery. Sussex. March, 1818.

*Ridgely's Notebook II, 72.*

*Mr. Wells,* for Spicer, moves to dissolve this writ of injunction, upon the following exceptions filed:

1. That there are no reasonable or legal grounds shown for apprehending that the waste to be guarded against would be committed.

2. That the injunction issued for and in behalf of John H. Burton, and on his petition and not for and on behalf of or on the prayer of the persons who are now the parties to the bill in chancery.

3. The service [——].[1]

William B. Spicer was discharged from this writ of attachment.

The cause was heard July, 1818, and a decree made.[2]

*Robinson* for complainants. *Cooper* for defendants.

Bill states that about December 13, 1803, and February 2, 1804, Adonijah Stanburrough gave two notes to John Norfman, one under seal, the other a promissory note, the first for $110 with interest from May 15, 1804, and last $51 with interest on or before May 1 next ensuing its date as is stated in the declarations in two actions brought to March Term 1809, in Supreme Court, November 25 and 26 by John Norfman *v.* Stanburrough. That Stanburrough appealed and pleaded payment and discount, and causes put at issue.

About March 20, 1810, Joseph Tam gave his judgment bond to Dr. Godwin, agent of Norfman for $177 in discharge of the sums claimed in said suits, without Stanburrough's being a party to said bond, though he was present at the execution of it.

But Tam insists that he gave said bond upon an agreement ([NOTE.] With whom?) that said notes should be transferred to him, that he might recover the money from Stanburrough and again to assign said notes at his pleasure. Therefore that complainants cannot state whether Tam gave his said bond to discharge a debt due from him to Stanburrough or for any other consideration. That about April 25, 1815, Tam representing that said notes were still unpaid, he and Shankland agreed in writing that Shankland should pay the notes on Tam's making it appear that they were still due from Stanburrough and no part paid, and Shankland as a security for payment of said notes, agreed that, when he sold the remainder of the land he purchased of John Smith, he would pay Tam said notes out of price for which said land should be sold. And it was added in a *nota bene* that he would give the land in security till sold, after October then next and should be sold, and if not he might sell it himself, as will appear by said agreement.

That Dr. Godwin entered judgment in lower court on Tam's bond and on April 4, 1815, was entered for use of Stephford and Ralston; *fieri facias* thereon levied on property of Tam. Tam got injunction and filed bill in chancery against Godwin, and stated therein that in consideration of said judgment bond given by him

---

[1] Blank in manuscript.

[2] At this point, *Ridgely's Notebook II*, 72, the account of this case is interrupted; it is resumed at *172*.

to Godwin, Godwin should cause said notes from Stanburrough to Norfman to be assigned to him, Tam.

Rhoads Shankland died January 25, 1816. Letters granted to J. H. Burton February 10, 1816.

That while said bill in chancery was at issue, after the death of Rhoads Shankland, Tam pretended to sell said land to William B. Spicer for $800 and gave him a deed without receiving consideration money and without his, Tam, having made it appear to said Rhoads Shankland, by assignment of the notes, or in any other manner, that said notes were still due and no part paid.

That injunction obtained by Tam was dissolved, and *venditioni exponas* issued July 30, 1816, against Tam, and Spicer paid to Staphford and Ralston the debt, and execution was returned stayed by order of plaintiff. That on August 27, 1816, after such pretended sale made by Tam, the said judgment was transferred on the docket to Spicer.

That at July Term, 1816, Burton, administrator of Shankland, obtained [order] of Orphans' Court to sell lands of Shankland for payment of debt, and among said lands, the land mentioned in said agreement was included. That about August 28, 1816, Burton set up said land for sale; it was bid off by Spicer for $1000.

At March Term, 1817, Burton demanded of Spicer the purchase money, and he offered Spicer to deduct what was to be paid by said Rhoads Shankland to Tam, if he made appear that the said notes were still due, and no part paid. But Spicer said he had only $400, and wanted Burton to return the land sold to him Spicer for the balance. Burton refused and returned the land not sold.

That Tam has failed to produce said notes and satisfy Shankland or his administrator, Burton, that they are still due, and no part paid, and Tam has omitted to produce the agreement made by him and Shankland, with any probate thereon, according to the Act of Assembly.

That Spicer entered on said land about August 28, 1816, and has cut and carried away timber and 300 cords of wood and 50 cords of hickory, and logs (rails) and received large sums of money therefore to his own use.

Burton has offered to settle etc. and requested Spicer to settle for timber etc. and to set forth agreement, that it might be cancelled, and show the consideration which induced him to give his judgment bond that is Tam.

Prayer. That Tam may discover the consideration or inducement for giving his bond for the notes to Godwin, and to produce

duly assigned the said notes; and specifically execute his agreement with Shankland and that deed given by Tam to Spicer may be brought into court and cancelled, and the agreement of Tam and Shankland be produced and cancelled, and Tam and Spicer to account for timber etc. and for general relief.

---

*Answer of Joseph Tam (read by Mr. Wells for defendant).*

That about February or March, 1810, defendant entered in agreement with Stanburrough respecting his purchase of land in Browhill Hundred. That among other things it was stipulated that if defendant would take up notes of Stanburrough to Norfman (the same as mentioned in the bill) that they should be allowed to go in part satisfaction of the price to be paid for said land.

That the defendant entered into a written [agreement] with said Dr. Godwin (attorney in fact, as he represented of John Norfman) that if he would set over to defendant said notes, he, defendant, would execute a bond and judgment with surety, as mentioned in the bill. That defendant did give bond and judgment to Godwin, that Godwin then immediately destroyed the written agreement and delivered said notes to defendant without setting them over to defendant, and entered satisfaction to the suits brought on the notes. Stanburrough was present, and knew that defendant had given the bond and judgment to Godwin, and made no objection, but admitted that the sum therein was the amount due from him on said notes.

That afterward the execution mentioned in the bill having been issued and levied on this defendant in said bond and judgment, defendant filed his bill against Godwin (notes not being assigned) as mentioned in the bill.

That there was an intimate connection between Stanburrough and Rhoads Shankland in matter of property. That the land which defendant's agreement with Stanburrough related to come to the hands of Shankland, and Shankland being cognizant of said agreement of defendant with Stanburrough respecting said land, Shankland entered into with this defendant the written agreement dated April 25, 1815, which is referred to and made part of the complainant's bill and is marked "O" (here follows a copy of it):

*Agreement between Rhoads Shankland and Joseph Tam, both of Sussex County.*

Whereas said Tam is now run to cost and executed for two notes given by Adonijah Stanburrough to John Norf-

man of Westmoreland township, one note dated December 13, 1803, the other note dated February 2, 1804, which note is said still to be due from Stanburrough and no part paid. If so, then I agree to pay them upon Joseph Tam making it appear the said note is due yet, now be it understood that whenever I sell the remainder of the land I purchased of John Smith, that is, the house and land not yet sold, then I pay said Tam the amount of the money due on said note out of the price the said land is sold for.

Witness our hands this 25th day of April, 1815.
Signed, *Rhoads Shankland, Joseph Tam.*

*N. B.* I will give the land in security till sold after October next, and shall be sold, and, if not, he may sell it himself.

Witnesses present, Stephen Palmer, Samuel Tam.

And pray to be part of the answer. That Godwin in the answer he filed to defendant's bill, referred to in complainant's bill, did set forth and rely on the said agreement of Shankland, as one ground of defence, insisting that this defendant, then a complainant, had full indemnity for his undertaking for said notes. Defendant's bill against Godwin was dismissed and defendant sustained great trouble and expense in said suit.

That to indemnify himself, defendant did about [——] [3] sell said land, in pursuance of the power Shankland gave him, to William B. Spicer for $800, the same being a fair price. That it was agreed that Spicer should satisfy the judgment Godwin had obtained as aforesaid out of the purchase money, and that he Spicer should take an assignment of said judgment for his security and defendant believes he did take an assignment for such security.

That the remainder of the purchase money due for said land from said Spicer defendant believes has been withheld by Spicer, from the uncertainty of what may be the issues of the pretensions of the representative of Rhoads Shankland against the sale made by this defendant to him Spicer.

That defendant will be prepared to pay over to representative of Rhoads Shankland all the money due to them by reason of said sale, after retaining such part of the purchase money as will satisfy the bond and judgment given to Godwin, and the costs, as also the costs of the suit in chancery against Godwin, and such other sum as will remunerate the defendant for his time, labor, and expense, by reason of Shankland's failure to perform

---

[3] Blank in manuscript.

the written agreement aforesaid, ánd of his loss by reason of Stanburrough's not fulfilling his agreement with defendant as aforesaid, and by the nonfulfilment by Shankland of that agreement which this defendant conceives he was in justice bound to do, when said land of said Stanburrough came to hands of said Shankland.

That Rhoads Shankland antecedently to his entering into aforesaid written agreement with defendant had notice that defendant made the agreement and gave his judgment bond to Godwin, in pursuance of the agreement made by this defendant and Godwin and Stanburrough as aforesaid, and that Stanburrough admitted the amount due on the notes, as in the notes, that satisfaction has been entered in the suits on said notes, that this defendant had received said notes without any assignment. That said notes are still in this defendant's hands unpaid, and that this defendant has repeatedly informed Shankland, that Shankland never intimated a doubt of the truth thereof.

That no indemnity was ever secured by Stanburrough to this defendant for the bond and judgment given to Godwin. That said notes to Norfman are in defendant's possession, and their sums, dates, suits and pleas on them are as in bill of complaint.

That Godwin agreed to assign the notes to defendant to give defendant a power over them in the event of the performance or nonperformance by Stanburrough of his agreement by sale of land, which land went afterwards, as aforesaid into hands of Shankland. That Shankland knew that Godwin had not complied, and that the notes were in defendant's hands unassigned, that Shankland always might have had the notes, and defendant is now ready to put them in the hands of his representative.

Admits the bond and judgment. Execution thereon. Bill against Godwin. Injunction. Death of Shankland. Administration, etc. That Godwin has been paid as set forth. That he had satisfied Shankland so far as in the nature of things, that said notes were unpaid by Stanburrough. That Burton may have obtained order to sell land of Shankland. That defendant had communication with Burton without settling the controversy, but no agreement was effected.

------

### Answer of William Spicer (read by Mr. Wells).

That antecedently to this defendant's contract with Tam for the land, this defendant had been informed that Tam and Stanburrough, before 1811, had agreed about said land. That by this agreement Stanburrough was to convey to Tam in fee said land,

at a price agreed on, that Tam was to take up the notes to Norfman as part satisfaction of purchase money. That Tam agreed with Godwin about the notes, notes were to be assigned to Tam. And so this answer states the transaction between Godwin and Tam. Execution against Tam. Injunction and bill in chancery against Godwin. That Godwin in his defense set forth the agreement of Shankland and Tam. That thereby Tam was indemnified. Bill against Godwin was dismissed.

That there was a claim of John Smith to the land on which Stanburrough was seated, of which the land to be conveyed to Tam was a part. That in pursuance of a secret agreement between Shankland and Stanburrough, Shankland obtained Smith's title. Close connection between Shankland and Stanburrough. This defendant considered himself safe in purchasing of Tam under Shankland's agreement. That this defendant agreed to pay Tam [$]800 for the land. Tam agreed with this defendant to pay Godwin. Tam conveyed in fee, by deed dated August 27, 1816, in consideration of $800 the said land. That this defendant on August 27, 1816, paid as part of purchase money to Staphford and Ralston, the holders of the judgment given to Godwin, $262.63. That when this defendant purchased said land there was situated on said land part of the family of Stanburrough, who, this defendant believed, had no right to the possession of the same; but this defendant was to be at all risk and expense touching them. That defendant offered Stanburrough's wife $100 to make no hindrance to his possession, so land cost him $900, a fair price, and Burton agreed to take $100 more.

Tam consented that Staphford and Ralston should assign judgment to him. This defendant always ready to pay balance to Tam, if Burton had not contested Tam's sale.

Admits order to Burton, administrator, to sell land of Shankland. That defendant agreed the land to be struck off to him at $1000, the payment to Staphford and Ralston being deducted, and John Burton giving him quiet possession. That finally Burton refused to give this defendant the quiet possession of the land, and then this defendant considered his agreement to purchase said land made with said Burton void.

That defendant has entered on three acres of said land purchased of Tam, contiguous to his other possessions, and cut the timber off the same for fuel, fence-wood, and for sale; that he carried some of it to be transported to Milton for sale, but how much he has used of each sort, or altogether, he cannot state, but may be estimated as the timber of three acres of woodland. Has no knowledge of the matters touching notes. Agreement with Godwin, etc. etc.

*Mr. Robinson* reads depositions for complainants.

Arthur Milley, 38 years. Rhoads Shankland died in the Spring of 1816. Spicer cut down two acres, 25 cords to an acre, wood at Milton 2.50 per cord. Tam sold the land after the death of Shankland.

David McIlwain, 65 years; Phebe Stanburrough, 23 years; John Burbage, 52 years.

Record of the suit in chancery, *Joseph Tam v. Staphford and Ralston, Dr. Godwin, and Purnal Lofland.* The cause was heard July 20, 1816, injunction dissolved and bill dismissed.

*Mr. Robinson* states that Tam had agreed to sell this land in May, 1816, to Spicer while his suit was depending in chancery. May 27, 1816, conditions of sale made by Tam in his sale of the land. This, with the parol proof, is the evidence, as *Mr. Robinson* says, of the sale on this date. (See Spicer's answer that deed was made August 27, 1816.)

*Mr. Wells* reads depositions for defendants.

John Burbage, 52 years; Zadock James, 50 years; Lemuel Tam, son of Joseph Tam; Thomas Walker; Stephen Palmer, 60 years; Elizabeth Connaway, 23 years; David McIlwain, 65 years; Peter Dickinson.

December 13, 1803, single bill, Adonijah Stanburrough to John Norfman $110, payable May 15, 1804, with interest from date.

February 2, 1804, promissory note, Adonijah Stanburrough to John Norfman $51 payable May 1, 1804, with interest from date. There is on this note a *nota bene* thus: This note is for cash lent and advanced.

Beside the note for $110 given about December 13 last for a roan horse, and then there is a note or letter underwritten on said note thus:

To Rhoads Shankland, Esq.

Sir, your not sending money by Mr. Norfman as was proposed would have been a great damage to the business in my case had he not advanced the above which I request you will pay when due, and charge to your friend, Adonijah Stanburrough.

---

After hearing the counsel of the parties, THE CHANCELLOR directed a decree to be made to the following effect:

1. That Burton, administrator of Shankland shall, at the next Orphans' Court, apply for leave to amend the return he made

March 4, 1817, to the order granted to him for the sale of part of the real estate of Rhoads Shankland; and that William Spicer in said amended return, be returned as the purchaser of the land in controversy, at $1000.

2. That Spicer be allowed to deduct from said $1000, the amount of the judgment, interest, and costs of Dr. Godwin against Joseph Tam, which judgment was recovered on the bond given by Tam to Godwin in satisfaction of the two notes given by Stanburrough to Norfman, for payment whereof Shankland entered in the articles of agreement with Tam. The balance then due from Spicer to Burton will be $726.

3. That immediately after said return shall be amended, Burton shall make a deed to Spicer at the court-house in Georgetown, and Spicer shall pay to Burton said $726.

4. That Spicer be restrained from committing waste until he shall pay said $726, but that he be allowed to remove the firewood already cut down in the three acres. And that Burton, administrator, be allowed said $274, and the sum of $50 paid to Tam, and his costs in this cause, in settling his administration account as administrator of R. Shankland.

5. That Burton shall cause an assignment to be made to Spicer of the lease executed to Phebe Stanburrough for said land, assignment to be made here at the court-house, immediately after Spicer shall pay Burton said $726.

6. That Burton pay to Tam $50 for his time, trouble, and expense touching the matters in said bill, and that then Tam shall set over and deliver to Burton the two notes of Stanburrough to Norfman, and also the instrument of writing between Shankland and Tam.

[THE] CHANCELLOR reserves rights to make further and other decree. Attachment to issue against party failing to perform decree. Each party to pay his own costs.